United States v. Brewington Ms. Pittaway Please, the Court. The trial court erred when it reversed its initial ruling on bad act evidence on the third day of trial after opening statement had already been given and multiple witnesses had been examined. In this fraud case at Barr, the jury heard about prior bad acts including multiple thefts as well as a later suspected fraud scheme. Hearing that ultimately prejudiced Mr. Brewington and rendered the trial fundamentally unfair. The laptop at issue, Mr. Brewington had already conceded that he would not contest possession of. And that's very critical in determining whether or not the prior bad acts were inextricably intertwined. Now the information that was on the laptop is what was used at trial to try to prove that TTS and UCS, the companies at issue, were conducting fraud. The prior bad acts were surrounding how the laptop came into Mr. Brewington's possession. Because Mr. Brewington agreed to not contest how the laptop came into his possession, that rendered it irrelevant and immaterial. And it also negated the probative value that could have been given from the information of how the laptop came into Mr. Brewington's possession. But you don't deny, right, that at the very least his possession of the laptop is sort of the chain of events that kicks off the whole fraud scheme, right? Respectfully no, Judge. And the reason why is because, again, Mr. Brewington conceded access to the laptop and even possession of the laptop because he never disputed that the laptop was in the office that his name was on the lease for. And the stealing, the so-called strong-arm robbery that happened to access the laptop, the taking of it, the theft of it, the strong-arm robbery aspect of it is what was not necessary. So I guess there are two pieces of questioning to which you might plausibly be objecting. One is use of the word took, right, and one is the use of the word stole. Yes, sir. But you guys asked the stole question, right? You commenced the line of questioning that resulted in the testimony of stole. I mean, wouldn't that be invited error? Respectfully no, Judge. The error wasn't invited because the question that ended up eliciting that testimony, it was an impeachment. It was a reading back of the trial testimony. And rather than simply say, yes, that was the testimony, the witness went off and that testimony was elicited. In addition, the witness had already been advised not to, because of the motions limiting, not to say those statements. So who asked the question, just so I'm clear, who asked the question that resulted in the testimony that the laptop was stolen? It started incrementally. First, the trial court allowed for the word taken instead of obtained. And then it was taken from a person and it implicated extensively that it was taken without permission. And then after the trial court incrementally allowed the initial motion limiting language to eviscerate, the strong arm robbery quote came from Mr. Brewington asking the question of reading back the grand jury testimony for impeachment. And then the witness stating that. Yes, I'm sorry. Go ahead, Judge Marcus. I thought that the sequence, and correct me if I have this wrong, was Brewington challenged Bell's characterization of Brewington's visit as having been merely pretextual. Question, isn't it true that you testified before the grand jury he didn't receive his last check? That was the question that elicited the offending response. As Bell replies, quote, he appeared in the office to dispute money that was not owed to him. That would have been okay, right? Wouldn't that have been a fair response and wouldn't that make it relevant to the inquiry? That he went there on the false pretense of collecting a check when in fact the object was just to get that computer. So let's hold aside the second part of the comment. Respectfully, no, Judge. And the reason why is because the reading back of the testimony was very specific. It was that no last check was provided. All the witness had to do is respond yes. The testimony was read exactly how it was given at the grand jury. And in addition, the witness had also been advised on the limits of the testimony. So the witness did not follow the court's orders regarding the limiting instruction or at least the assistant United States attorneys. And that is why that witness. I'm curious, was there Jenks material to the effect that when Bell testified in the grand jury, right? Yes, sir. In the grand jury, did he characterize it the same way? Did he give basically the same account that he gave to you when that question was asked? No, Judge. And the reason why is because the grand jury testimony was exactly what was read into the record. And there was just a moment. I guess what I'm asking is just one line. Did he say in words of substance this was a strong arm robbery in the grand jury? And you had that Jenks material in advance when you questioned him. I recall something to that effect that would have triggered the need to go for a motion in limine. And that's exactly why I filed the motion in limine is anticipating that that could potentially come up as an issue at trial. And once the trial court granted the motion in limine, that's what Ms. Burnton did not. What exactly did the judge say in ruling on your motion in limine about the context of what Bell could and could not say? It began with that the word obtained would be used, which was neutral, and that the assistant United States attorney would use leading questions to avoid eliciting. And he stole it. Correct. Correct. What about this strong arm business? Did you move in limine about that, knowing that Bell had said that in the grand jury? Yes, sir. And did the judge give a prophylactic ruling and say, you make sure this witness says nothing about strong arm robbery? Is that part of the judge's ruling in response to your motion in limine? The judge, I do not recall the judge turning to Mr. Bell and instructing Mr. Bell himself. However, the AUSA did state on the record, I've instructed Mr. Bell. This came when the AUSA began using the word taken and using open-ended questions. And there was an objection to that, and that it was in violation of motion limine. Let me ask you just one very quick question. Assuming, arguendo, that it was error to elicit from, that Bell had no business and it wasn't invited, saying that he grabbed from the secretary forcibly committing strong arm robbery. That's what his testimony was, the offending comment. Let's assume that was error. Why wasn't it harmless in the face of a pretty powerful case against Brewington? It is not simply the fifth motion limine language, which has to do with the stolen. It's the individual as well as the cumulative prior bad acts and subsequent bad acts that rendered the process fundamentally unfair. So it's not simply about the stealing of the laptop. It's the stealing of the laptop as well as the jury hearing about a subsequent suspected fraud scheme. It would be individually and cumulatively all of those prior bad acts together rendered the process fundamentally unfair. And regarding, I did want to point out on some of the- You're kind of running out of time. I'd like to make a point there. Yes. The case law also provides for where the error has been elicited by counsel. The court still has reversed on that, and I would be citing to Odom, which is the Fourth Circuit case, on that point. You're safe for a moment with that. Yes. Mr. Lepardo. Good morning. May it please the court. I would like to direct the court's attention in the limited time to what I think was the main issue in my appeal, which was the use of the acquitted, uncharged conduct in sentencing. The case law, including Alene, seems to say that any punishment that will be above what the jury found actually should not be above what the jury found. And one analogy I would use to this is that we went into this trial with, I believe, 12 charges. And my client was convicted of a conspiracy count. But out of all the amounts that the jury could have picked, they picked $794 and checked not guilty on everything else. So the analogy I would use is it's kind of like going to trial on a grand theft, and the jury comes back with a petty theft. But then at sentencing, you have a second trial where the judge is using a lower standard to determine punishment. And this just seems to be at odds with the Sixth Amendment. Is that true even though the sentence here is below the statutory maximum and even below the guidelines? I think it is because it would have been substantially lower if the amount used was $794. I mean my argument would be if the government wants to prove $600,000 or more, they need to prove it. They need to prove it at trial. Yeah, I mean I guess what I should have – I should have prefaced my question by saying under our case law, does your argument hold up even if the sentence is below the statutory maximum and the guidelines range? I do believe so, and I do believe the case law has said that the maximum is not the statutory maximum. The maximum is what the judge can inflict without finding additional facts in the jury file. So I would argue that you could still be in the middle range somewhere, and that perhaps you should have been at the low end of all possible sentences. So I don't believe that that applies just to maximum or even minimum mandatories. It was your contention then that cases of ours like the one that I've got jotted down in my notes, United States v. Smith, sentencing courts may consider both uncharged and acquitted conduct in determining an appropriate sentence and may find by a preponderance of the evidence all facts related to imposing a sentence below the statutory maximum has been overcome by a lien or otherwise? I would argue definitely by a lien which seems to incorporate apprendi and other cases that basically say that if you're going to punish someone, it should be facts that the jury found. I think we understand. You're making an apprendi argument, basically. Yes, and a lien. I think what Judge Newsom is saying, our precedent is as long as the court didn't exceed the statutory maximum, give it a kicker, you don't have that kind of argument. I understand the court's position. Okay. You're preserving the point. I think 11th Circuit precedent, I just think that a lien is at odds with that and certainly goes against the common sense. Right. The problem you have here, though, is you would have to either convince this court sitting in Bonk to reverse that case law because this panel is bound by these prior cases or convince the Supreme Court on a cert petition. Other than that, we're bound by this prior law, aren't we? I mean the prior 11th Circuit precedent squarely on point. Correct. Okay. I suppose part of the process is to make a record. Well, you preserve your point. But I also have reviewed the Tejas case, so I do understand. You say so, but by the time. Okay. Ms. Bodnar. May it please the court, Roberta Bodnar for the United States. The evidence that Brewington challenges is classic, intrinsic evidence that was admissible. The court has asked some questions about the facts of how all these evolved. It's accurately summarized at pages 24 to 26 of our brief and all the record sites are there. What happened here is that I don't know if it was in the grand jury testimony or if it was in some other document that the defendants had, but they knew ahead of time that Bell was going to characterize this as a strong arm robbery because that was the words that they used in their motion in Limine. They moved in Limine to exclude the evidence. The court considered the motion. Defense counsel suggested that Bell could use the word obtained instead of stolen or strong arm robbery, and as a compromise, a middle ground, the court attempted to sanitize the evidence and asked the prosecutor to elicit the evidence in that fashion, and the prosecutor said he would attempt to do that. Then when Bell testified, he gave, all through his direct testimony, a very sanitized version of events using the word took instead of obtained. The trial court ruled that that was merely semantics and that for Brewington to be worried about the use of the word took instead of obtained . . . That was over objection. Yes, but the court ruled that that was just a matter of semantics and that the difference between took and obtained was tantamount to changing the tire on a car that was on fire. They proceeded to cross-examination, and on cross-examination, all of the defendants, including Brewington, tried to impeach Bell with the circumstances of the event. Why would you go to work for somebody who'd taken something from you? Isn't it true you owed him his last paycheck and he was just trying to get that money? They pressed Bell, and in response, during Alec Wickley's testimony, Bell used the word stolen. It was during Brewington's cross-examination that Bell used the word strong-arm robbery, and the court ruled then and there that was invited error. Regardless of who invited it or how it came in, the evidence was admissible. This was evidence of the setup of the crime, and just like . . . What relief was sought at that moment? Oh, she moved for mistrial based on that. That's what I thought. And the trial court denied it out of hand. This evidence . . . But not a cautionary instruction of some sort. There was . . . It would be hard to give one. You'd have to give a fictitious instruction. Yes. What happened, the evolution of the testimony was the facts of what happened, and this was important impeachment evidence for Bell because the jury had to put in context why he was there, why he knew about things. These were all judgments, information that the jury was entitled to have. There was a cautionary instruction when there was a question about, you didn't call the police, did you? And Bell blurted out, well, that was some other offense. That was some other case that had happened before. And that's summarized in our brief, too. It's in a footnote in the pages that I referenced. At that point, the court gave an instruction and said, this is not evidence before you. You shouldn't consider it. So there was that one cautionary instruction, but the rest of it . . . Did the judge advise Bell to be careful about how he testified and to stay away from strong-arm robbery and things like that? No, Your Honor. He just told the prosecutor to be careful. He told the prosecutor at motion and limine that I'll rely on you to elicit things in that fashion, and then when Bell used the word taken, the court ruled that that was not a violation. Was Bell present when that colloquy went down? It appears so, yes. It appears so. All of this evidence, though . . . Yeah, I understand why it might be inextricably tied in to explain how he got there and why he wanted the computer, because it had data to enable him to start a new business. But I don't see why it was necessary to bring out that he took it by strong-arm robbery. Well, Your Honor . . . Particularly when the judge said, you know, spent so much time talking about obtain instead of steal, et cetera. It was clear what the court was saying. Your Honor, I understand that. Basically, as a 403 ruling, the judge was saying, yeah, you can bring it out, but don't lard it up with strong-arm stuff. Yes. And yet that came out anyway. And the strong-arm robbery would have been better if that wasn't elicited, but the point is that Bell had an ax to grind. One of the problems with the motion for mistrial is that it would have acquitted the defendant because the government didn't cause the ground for the mistrial. So if the court granted the motion for a mistrial, it, in effect, was depriving the defendant of a verdict before that jury. That's why I asked the question about cautionary instruction, but it was impossible to give a cautionary instruction. The court could tell the jury. I told him not to do that, but the man told the truth. That's what he said to the grand jury. Yes, and that was the point I was trying to make just now. Bell was talking about the circumstances of how this offense started, and his . . . I mean, it was clear during all of the cross-examination, he was a hostile witness to all of them. I mean, after all, he's one of the witnesses who put Allegwickie managing his own tier of collars. And he knew a lot about what went on in that Harp Co. building, and so they had a right to impeach him. And the questions that they were asking . . . Nobody is disputing that they had a right to impeach. Nobody was disputing that some of this would come out. But wouldn't it have been easy enough for the prosecutor to have cautioned Bell to be careful? I think the prosecutor did. And just stay away from strong-arm robbery? And can I just get a clarification? I'm so sorry if I'm missing a fundamental point. Who's asking the questions that lead to strong-arm robbery and stolen?  Right. Brewington asked the question that led to strong-arm robbery. During the direct, Bell testified about took and taken. That's what I thought. The direct was a very sanitized version, and that is what the court was trying to achieve. But you can't sanitize this witness's perception that he's been the victim of a strong-arm robbery. I wish they hadn't used the word strong-arm robbery. I think it was harmless in the context of the trial. But it is what happened, and that came out. That's a risk that the counsel took by vigorously impeaching Bell, which is what they were doing. Yes, and that's why the trial court on the spot said this is invited error, and it was. Tell me why it was harmless. Let's assume for the purposes of my question that it was error for Bell to bring out strong-arm robbery, as opposed he got it, he obtained it, he took it, even he stole it. Strong-arm robbery is a very loaded way to put it. It may be accurate, but it gives its own implication. Why was that if error harmless, given the nature of the evidence presented against Brewington in the case? Okay, for two reasons. First, the jury would have had no trouble assessing Bell's emotional state, Bell's perception, and juxtaposing that against the other side of what happened. Isn't it true you owed him a paycheck? He was impeached with his grand jury testimony to that effect. I don't think the jury had any difficulty assessing the credibility of this evidence and its weight. That's one. Two, the evidence against Brewington in the context of this fraud scheme was huge. There were recordings of him with the bank, the police officer who was posing as a bank manager, talking all around how this wasn't a fraud and, oh, we can't work with this company anymore, we can't work with that company anymore, we've been misled, and thank you for pointing it out to us, and we'll try to fix it all. The jury heard all of that, and they heard all of the testimony from the victims about how they were defrauded, how things were set up, how Brewington set up the incorporation and put it in Sutton's name, used an address that was different from the Harbco building that they were operating in, which would have made it much more difficult for someone to identify the business that actually committed the fraud. How they switched bank accounts, and this came from Bell, how Brewington set Bell up to be the fall guy. That's overwhelming evidence against Brewington, and he was the organizer. So I don't think any of that evidence about the laptop was unfairly prejudicial to him at all. I would like to make one point about the other business. There was no point in this trial, not one, in which the jury was informed that the other business, Gold Vault Metals, was investigated by police. They were not told that. What the jury heard was that Brewington went back to the Harbco building and rented another office, and that was intrinsic evidence because Brewington explained to the manager why they made the midnight move. The district court found that the evidence of the midnight move was as pure a form of consciousness of guilt as there could be, and there was no way to bring it out except to say that he rented another building. Then later, an Orlando police officer testified to establish the chain of custody and said that he executed a search warrant at that building. There was no reason for the jury to have understood that the search warrant was based on information relating to another business and not to the charged fraud. As a matter of fact, the police officer, when he testified, was asked, have you investigated fraud cases before, and he said he'd investigated timeshare telemarketing fraud. There was no information about any fraud related to Gold Vault Metals. There was no prejudicial impact relating to any other potential crime that the jury would have perceived. Just briefly, as this court already has commented, allegorically sentencing arguments are foreclosed by precedent. His sentence is firmly within the boundaries. Counsel understands that. He's making his point. Yes, Your Honor. If the court has no other questions, I'd ask this court to affirm. That way. The trial court should not have incrementally taken steps that ultimately reversed the motion in Lemonet's ruling. One of the factors is also the probative value of impeaching Bell was not necessary. Several other witnesses had already placed, and this would be the landlord as well as the receptionist, placed Mr. Bell at the business several times. So whether or not Mr. Bell went to work for Mr. Brewington was not at issue. Let me ask you a question about strong armed robbery. The motion for mistrial, right? Yes, sir. And what happens in terms of double jeopardy if the court grants it? The motion for mistrial was in effect a request for severance. Yeah, but he's entitled to go to a verdict on that jury. So if the court grants the mistrial, I suggest that when the case is set for trial a second time, you're going to move to dismiss the indictment on grounds of former jeopardy. The judge did not make an error. Do you agree with that? I mean, it was a witness who volunteered the information. Well, I believe that the judge is ruling the reverse. I understand. The judge instructed the prosecutor to interrogate him in a certain way, and the prosecutor did that. Then this happens on cross-examination, and he blurts it out. Who committed the error? If this court were to find out. No, no, no. Can you answer that question? Who committed the error? The government? It's the position, Mr. Brewington, that the trial court did. The trial court permitted the error. No, the trial court didn't say, go ahead and blurt it out. Correct, however. Okay, the trial court assumed for sake of discussion that ruling in limine was appropriate first. That's okay. No error. So now he blurts it out, and there's a motion for mistrial. The judge grants the motion. The argument is that the prosecutor probably, or the government, caused the mistrial, in which event if he grants the motion, the defendant is acquitted, in my view. That would be the argument before the new trial. And I recognize that the court would view that as an incredible remedy. Well, so the only other thing is a cautionary instruction, of course. But the judge is on the horns of a dilemma there if he did it voluntarily, because the witness spoke the truth as he had told the grand jury at any rate. So it would have been a fabricated set of testimony in the cautionary instruction. That's my problem. That would be an incredible remedy and procedural posture to set it in, should it be reversed on that ground. I don't necessarily think that this court would have to get there, though. Well, you want it reversed? You want a new trial on the ground that a witness blurted something out? Oh, there's definitely no judge. I see it that the trial court reversed its ruling, and we never would have gotten to the strong-arm robbery and the stolen if the judge would have enforced the initial ruling, which was obtained and direct. I understand. So your grievance is with the original ruling. Let me ask you just a follow-up on Judge Shoflat's question for a moment. The motion for a mistrial came from you, not from the government. The error obviously came from the witness, whether it was because you asked the question or because the prosecutor didn't properly advise the witness or because the witness said something he wasn't obliged to do can be debated. But you moved for the mistrial. If the court had granted it and they rescheduled the case for a new trial a week later, would you have a double jeopardy claim? Could you say, Judge, you can't try my client twice for the same crime because of the circumstances surrounding how the mistrial was granted? Could you have it both ways? Could you move for a mistrial, get it, and then turn around and say you can't try me twice? Candidly, I would not have done that. Could you is what I'm asking. You wouldn't make the motion. As I stand here right here, candidly, I would not have. You wouldn't make the motion for a double jeopardy dismissal? Counsel, you're blaming the government for creating the grounds for the mistrial. When a defendant moves for mistrial because the government has created the grounds for the mistrial, double jeopardy follows usually. Yes, sir. And I'm stating candidly, going back, I would have had to research the issue. But you understand the thrust of Judge Schofield's question is if the court had granted the motion you wanted and if, indeed, that led to a conclusion that it was double jeopardy, then he almost would have been compelled to say no. All you got is a prophylactic instruction if you want one, a curative instruction if you want one. But you didn't ask him for a curative instruction, did you? At that point in time, no. Right. I believe that the court said. Once the words were blurted out of Bell's mouth, did you say, Judge, I want a mistrial? Court says no. Well, at least give me a curative instruction of boom, boom, and boom. I thought the answer is no to that. Do I have that right? Correct, Judge, that I did not ask for a curative because no curative instruction could have remedied the bell that had been rung. Now, the judge had at times rendered. So once the bell was rung and he blurted it out, case over, mistrial, no new trial, he gets an acquittal. Is that your theory? I think that could be a theory. My theory was along the lines of the issue regarding the severance. I believe that that could be a. Severance is a mistrial. When you sever the defendant out in the middle of a trial on grounds created by the government, that's a mistrial. It is a severance, but it's a mistrial. It is a severance with the motion for the mistrial. I would bring the court's attention to the Midcoff and the Marcus and the Baker courts. In Midcoff, the defense opened the door, and the trial court still ruled that it was inadmissible evidence, even though the defense had opened the door. And with the Baker court, they reversed even without an objection when there were other bad act evidence that came in. Let me ask you something. I thought you moved for a severance after the trial and after the verdict, not before the trial and not in the middle of the trial. Do I have that right? The word severance are not. You moved for a severance. You said that the interest of your client was so mutually antagonistic to the interest of the co-defendants, and the defenses were so mutually antagonistic they could not be tried together. But you made that motion, if I have it right, after the trial, after the verdict, etc. At that point, you said there should have been a severance. Have I misunderstood that, or did you move in the middle of the trial for a severance? The motion for mistrial was based on severance grounds. When did you move to sever on the grounds of antagonistic defenses? That was post-trial. So in the trial, you didn't say, Judge, their defenses are antagonistic. You've got to sever them, grant a mistrial. You didn't say that. You wanted a mistrial because he blurted out strong-arm robbery. I just wondered, do I have that right, or have I misunderstood that? You have it right that the word severance wasn't used with the request for the motion for mistrial. Because there was, as the judge put it, due process rights of other co-defendants and eliciting the impeachment testimony. Did you or did you not move for a mistrial on the ground of the blurting out? I did. Yes. As a severance, yes. That would result in a severance. That's the result. But you moved for a mistrial. Yes, sir. On the ground of the misconduct. Correct. Okay. I think we understand your case. I think that my time has run, Judge. Mr. Lupardo. Once again, may it please the Court, Counsel, the government didn't spend much time addressing my primary argument, which would assume— Well, the government has the same problem you do, and that's not a problem. We have precedent that forecloses your argument, and you're preserving the point. I understand, Your Honor, and so I assume that that limits my rebuttal. I don't know if the Court wants to hear any other arguments. Anything you want to say in rebuttal to what the government said that relied on precedent? Well, the one thing I would like to perhaps discuss to maybe shed a little light on what the government said about Brewington, which is I know that I questioned Bell about the laptop for impeachment because what he said was, yeah, this guy came, he stole my laptop. He made a big deal out of it. He himself called it a strong-arm robbery, but then I went to work with him. I used it as the impeachment of, so you're going to go to work for someone who steals from you. Now, it was my understanding that strong-arm robbery was not going to be allowed, and the judge saw our defenses somewhat antagonistic, but the judge . . . Strong-arm robbery? No, I didn't care. I just said stole because the idea was that . . . Right, but you weren't looking to impeach Bell and bring out that in fact the other defendant was involved in a strong-arm robbery. That wasn't your object. No, and I never would have used that language. I think the judge just understood that that limited the government, but it really didn't limit me. I think the judge was comfortable with the language I used, but again, I did it as impeachment because it was my opinion at the time that that probably didn't happen. They stole from him, and then they become buddies. He even said that was the only job he could find, like in the entire world, was to go to work for Brewington after he stole from him. I hope that sheds a little light on that. I don't know. I understand. If that helps. Thank you. Thank you. Mr. Labarda, you and Ms. Padaway took these cases on court appointment and we're grateful for your having done so. Thank you, Your Honor. Patel versus Attorney General. Mr. Oswald.